IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

VERA OPAL ELAINE ALLEN,          )
Executrix of the Estate of       )
PATRICK R. ALLEN,                )
                                 )
            Plaintiff,           )          4:10CV3055
                                 )
        v.                       )
                                 )
MICHAEL J. ASTRUE,               )          MEMORANDUM OPINION
Commissioner of the Social       )
Security Administration,         )
                                 )
            Defendant.           )
_____)


        This matter is before the Court for judicial review of

a final decision of the defendant Commissioner of the Social

Security Administration ("Commissioner") pursuant to 42 U.S.C.

§ 405(g) of the Social Security Act (the "Act").  The

Commissioner denied Patrick R. Allen's ("Allen") application for

a period of disability and disability insurance benefits, finding

Allen was not under a disability at any time from the alleged

onset date, February 1, 2000, to the date last insured ("DLI"),

September 30, 2005.  Upon review, the Court finds the

Commissioner's decision is not supported by substantial evidence

and should be remanded.

## I. BACKGROUND

Allen was born on June 9, 1955 (Tr. 192) and died on October 3, 2010, of hepatic encephalopathy and cirrhosis[1] (Filing No. 23).  Allen held an associate's degree in business which he completed in May 2004 (Tr. 567).  He worked as a truck driver, construction worker/equipment operator, and store laborer before his alleged disability began on February 1, 2000, and likely after his disability began -- Allen reported earnings of $4,513.00 in 2000, and although Allen alleged disability as of February 1, 2000, Allen had never earned this amount of money for one month's work in his life (Tr. 24).  Allen attempted to engage in this type of work sporadically in 2004 and 2005, and also worked as a hotel clerk for two months in 2004 (Tr. 24, 33, 198, 203).  Allen's last documented employment was for 8 days with GoodWill in November 2006 (Tr. 24).  Allen lived with Vera Opal Elaine Allen, his wife, during his period of alleged disability (Tr. 567).  It is unclear, however, if Allen and his wife separated, and Allen lived on his own at one point in time during his period of alleged disability, as the record contains conflicting evidence (Tr. 462, Tr. 567).

---

[1] As Allen passed away after filing his complaint, the past tense is used in this opinion where the use of the present tense would normally be expected.  This lawsuit is now brought by his estate.

-2-

## A.    Medical Records

Before Allen's alleged disability began, in 1975, Allen was in a motor vehicle accident where his car was hit by a train (Tr. 318).  On November 15, 1997, Allen was hospitalized after cutting his left hand on a table saw while intoxicated (Tr. 398, 401).  Allen subsequently had ulnar-nerve-repair surgery (Tr. 403-04).  On February 4, 1998, at a follow-up appointment, an examiner noted that Allen was not wearing his hand splint as instructed and exhibited signs of muscle wasting (Tr. 475).

On June 11, 2000, Allen was admitted to the hospital with mild confusion (Tr. 358).  A physician noted Allen appeared "basically hung over," even though Allen "vehemently" denied any alcohol consumption over the preceding two weeks[2] (T. 358).  The

_____

[2] Allen admitted that he struggled with chronic alcoholism (Tr. 358).  Although there is evidence that his alcoholism was in remission during his period of disability (Tr. 25 ), Allen testified that he still consumed alcohol during his period of disability (Tr. 523).  The administrative law judge ("ALJ"), however, did not determine if Allen's substance use was a contributing factor to Allen's determination of disability:

> If it is found that the claimant is disabled and there is medical evidence of a substance use disorder, the ALJ *must* determine if the substance use disorder is a contributing factor material to the determination of disability.  In making this determination, the undersigned must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use.  If the

-3-

physician observed that Allen was emaciated, had poor muscle
tone, and looked extremely old for his age (Tr. 358).  The
physician suspected these complications were a result of chronic
alcoholism and liver cirrhosis as Allen admitted to struggling
with alcoholism (although he denied tobacco use), and Allen's
noncompliance with diabetes mellitus medication (Tr. 358).  The
physician advised Allen's wife to ensure that Allen avoid alcohol
and take a daily multivitamin (Tr. 359).  The next day, at a
follow-up appointment, a physician noted that Allen's confusion
had improved (Tr. 444).

On June 27, 2000, Allen presented before a physician
for a checkup (Tr. 443).  Allen reported complications after
restarting his ulcer and arthritis medications (Tr. 443).  His
physician diagnosed probable medication side effects, and
instructed Allen to discontinue these medications for the next
month (Tr. 443).

Allen returned for another diabetes checkup on December
18, 2001 (Tr. 442).  Allen was diagnosed with diabetes,

---

remaining limitations would not be
disabling, the substance use
disorder is a contributing factor
material to the determination of
disability (20 CFR §§ 404.1512(g),
404.1560(c), 416.912(g) and 416,
960(c)).

(Tr. 23) (emphasis added).  This matter should be properly
addressed by the ALJ on remand.

"currently not well controlled," high blood pressure, and tobacco abuse (Tr. 442).

At the request of Western Nebraska Community College, Kara Wiedel ("Wiedel"), a therapist, examined Allen on December 28, 2001 (Tr. 468).  After administering various tests, Wiedel diagnosed Allen with mathematic and writing disorders, and assigned a Global Assessment of Functioning ("GAF") score of 65[3] (Tr. 471).  Allen's math scores were in the "elementary" range when he took Wiedel's test unaided, but improved to "college level" when he received extra time, could use a calculator, and had a "scribe" to record his answers (Tr. 468-69, 471).  Allen scored in the fifth percentile in Wiedel's spelling test, which may have reflected difficulties processing visual information (Tr. 471).  Wiedel also observed that Allen wrote slowly with his right (non-dominant/uninjured) hand, and made spelling errors when writing dictated material (Tr. 471).  Allen obtained a full-scale IQ score of 87, consistent with average to low-average intelligence (Tr. 472).  Wiedel recommended to the community college that Allen

---

[3]  The GAF scale is a tool used to rate a patient's level of functioning with regard to psychological, social, and occupational areas.  *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. rev. 2000).  A score of 71-80 indicates the patient has transient symptoms or a "slight" impairment.  *Id.*  A score of 61-70 indicates a patient has "mild" symptoms but is "generally functioning pretty well."  *Id.*  A score between 51-60 indicates "moderate" symptoms.  *Id.*

> be given extended time, use of a
> calculator, and a scribe to fill
> out the answer sheet during tests
> and quizzes[;] tape record
> lectures, as it may be extremely
> difficult for him to take notes
> efficiently[; and] obtain a
> psychiatric evaluation to determine
> if psychotropic medication would be
> beneficial, as there is anecdotal
> information that suggests that
> selective serotonin reuptake
> inhibitors may improve performance
> in people who have a disorder of
> written expression.

[Tr. 473].

On January 4, 2002, Allen saw Shelley McCoy, M.D., for a medication review (Tr. 370). Dr. McCoy diagnosed uncontrolled diabetes, back pain, and tobacco use disorder (Tr. 370). On March 25, 2002, Allen told Dr. McCoy he felt fatigued with decreased energy (Tr. 370). On June 21, 2002, Allen reported to Dr. McCoy a recent episode of extreme fatigue (Tr. 369). Dr. McCoy diagnosed uncontrolled diabetes and fatigue (Tr. 369). On July 23, 2002, the county corrections office called Dr. McCoy to verify that Allen required a second mattress because of back pain[4] (Tr. 369). Dr. McCoy, concurred, diagnosing Allen with

---

[4] It appears from the record that Allen was incarcerated for some time in the summer of 2002; however, the ALJ, Allen's counsel, and the Commissioner did not address this factor in determining Allen's eligibility for social security disability benefits. This may have affected Allen's eligibility for benefits. *See* The Social Security Act, § 202(x)(1), 42 U.S.C. § 402(x)(1); U.S.C. Const. Art. 1, § 9, cl. 3, § 10, cl. 1. This matter should be properly addressed by the ALJ on remand.

chronic back pain from a prior train accident, osteoarthritis, and degenerative joint disease (Tr. 369).

Allen saw Dr. McCoy again on August 15, 2002 (Tr. 368). Allen claimed that his back pain interfered with his ability to "ambulate" to and from school (Tr. 368). Allen also requested house arrest, so he could sleep better (Tr. 368). Dr. McCoy diagnosed sacroiliac joint pain and back pain, prescribed valium and physical therapy treatment, and recommended house arrest (Tr. 368). The record is void of any evidence that Allen pursued physical therapy treatment (Tr. 368).

On January 5, 2004, Allen presented to Dr. McCoy for gas, burping, and increased fatigue (Tr. 367). Dr. McCoy observed that Allen had a weak, unsteady gait and diagnosed poorly controlled diabetes, treatment noncompliance, and fatigue (Tr. 367).

On January 28, 2004, Allen went to the emergency room (Tr. 325-39). Allen's wife reported Allen had not been able to eat or take diabetes medication for two or three days (Tr. 325). Cynthia Ward, D.O., noted that Allen was extremely confused, and had to be restrained (Tr. 325). Dr. Ward diagnosed encephalopathy or cephalitis, and mild delirium (Tr. 326). Dr. Ward recommended an MRI of Allen's brain (Tr. 351). Upon review, it was found that Allen had slight atrophy and hepatocerebral degeneration (Tr. 351, 353).

-7-

After remaining in the hospital for five days, Dr. McCoy discharged Allen (Tr. 380).  She noted that Allen had cellulitis in his legs, so he received antibiotics (Tr. 380). Allen also underwent a colonoscopy because of blood in his stool (Tr. 380).  Allen's diagnosis at discharge included encephalopathy, poorly controlled diabetes with cellulitis, and diabetic ketoacidosis (Tr. 381).

On February 5, 2004, Allen presented to Dr. McCoy for a post-hospitalization follow-up examination (Tr 367).  Dr. McCoy observed that Allen exhibited an unsteady gait, could not walk well due to swelling and open wounds on his shins and feet, had slow speech and cognition, and demonstrated weakness (Tr. 367). Dr. McCoy diagnosed peripheral edema, cellulitis of the foot, and uncontrolled diabetes (Tr. 367).

On February 13, 2004, Allen reported to Dr. McCoy for a follow-up concerning his diabetes, peripheral edema, and cellulitis of the foot (Tr. 368).  Allen complained that he felt weak all the time although he had changed his diet as much as possible to meet his health needs (Tr. 368).  Dr. McCoy reported that Allen's fatigue and confusion had improved, and that his cellulitis was resolving with treatment (Tr. 368).

At the request of the state on March 10, 2004, Jerry Reed, M.D., a state Disability Determination Service ("DDS") physician, completed a physical residual functional capacity

-8-

("RFC") assessment based on review of Allen's file (Tr. 287-94). Dr. Reed reported that Allen was a diabetic that was non-compliant with his medication, having two episodes of probable diabetic ketoacidosis, and indicated some evidence of cirrhosis and gastric ulcerations, and a history of alcohol abuse (Tr. 292). Dr. Reed, however, concluded there was "no indication in any of the [medical records] that [Allen had] a back impairment, [complained] of back pain to medical sources," or required a cane or medication for back pain (Tr. 292-93). Dr. Reed also noted that Allen's extremities were without cyanosis, clubbing, or edema, and Allen's CT scan and left wrist ex-ray were normal (Tr. 292). Because of these conclusions, Dr. Reed found Allen only "partially credible," and concluded Allen could lift twenty pounds occasionally and ten pounds frequently, and could sit, stand, or walk for about six hours in an eight-hour day (Tr. 288, 293).

On April 23, 2004, Allen returned to Dr. McCoy complaining of diarrhea, a stomach ache, and burping (Tr. 483). Allen admitted he forgot his medication at times (Tr. 483). Dr. McCoy reported Allen appeared weak and gave him sample medication for diarrhea (Tr. 483).

On June 30, 2004, Michael Slosnerick, Ph.D. performed a psychological evaluation of the claimant (Tr. 24). Dr. Slosnerick diagnosed a history of alcohol abuse in five-year

remission and an adjustment disorder with mixed emotional
features and gave Allen a GAF of 53 (Tr. 25).

On August 23, 2004, at the request of the state, Allen
Hohensee, M.D., a state DDS physician, completed a non-examining
physical assessment of Allen (Tr. 313-20).  Dr. Hohensee's
medical and credibility conclusions were identical to Dr. Reed's
March 10, 2004, conclusions (Tr. 313-20).

On July 14, 2006, Allen presented to Gerhard Nyase,
M.D., to establish a primary care provider (Tr. 462-66).  Allen
complained of depression, back pain, and balance difficulties
(Tr. 462).  On examination, Dr. Nyase observed that Allen looked
depressed, had some suicidal thoughts, was currently separated
from his wife, and had mild tenderness in his lower spine (Tr.
462).  Dr. Nyase diagnosed depression, back pain, and weight loss
(Tr. 462).  He gave Allen samples of an antidepressant and
prescribed a pain reliever (Tr. 462).

On March 3, 2007, Allen presented to Peter Crane, a
physician's assistant, for a medical evaluation (Tr. 492).  Allen
reported he had stopped diabetes medication and had a history of
epididymitis and had groin pain (Tr. 492).  Mr. Crane diagnosed
epididymitis and diabetes and gave Allen samples of diabetes
medication (Tr. 492).  Allen returned for lab results on March 5,
2007 (Tr. 491).  Mr. Crane reported Allen had redness and
swelling on his left anterior forearm (Tr. 491).  On March 24,

-10-

2007, Allen reported elevated blood sugar to Mr. Crane, and received additional diabetes medication (Tr. 490).

On April 20, 2007, Allen told Mr. Crane that he injured his tailbone from a fall and further reported that he had chronic low back pain (Tr. 487).  Mr. Crane sent a letter to a rehabilitation center on Allen's behalf, indicating Allen could not lift more than ten pounds, and should be excused from bending stooping, reaching, kneeling, pulling, and prolonged standing and sitting, due to his "chronic back problem" (Tr. 489).  The record is void of any evidence that Allen pursued rehabilitation treatment (Tr. 489).

**B.   Allen's Reported Daily Activities and Symptoms**

Allen reported that he completed an associate's degree in business, but required a tutor, and extra time during tests (Tr. 518, 534-35).  Allen claimed that he could read, write, add, subtract, multiply, and divide, but he could not add two-digit numbers in his head and used a calculator when he took tests (Tr. 567-68).

Allen claimed he was left-handed, but could only use his thumb and first finger on his left hand because of a table-saw injury (Tr. 519).  Allen indicated that the injury to his left hand prevented him from holding a pen or pencil with his left hand (Tr. 519).  Allen also reported that he sometimes used a cane that a friend gave to him (Tr. 532-33).  In light of

-11-

Allen's reported left hand injury at the April 10, 2006, hearing, the ALJ asked Allen how he managed to carry his cane with his left hand upon arriving at the hearing; Allen claimed he had carried it with his right hand, but then acknowledged that he could grasp the can with his left hand (Tr. 519).

Allen reported that extreme temperatures, dampness, and humidity aggravated his conditions (Tr. 571). He also testified that he drove and shared a car with his wife (Tr. 571).

Allen described that in a typical day, he would wake up between 5:00 a.m. and 5:30 a.m., sometimes water the lawn, tend to a few tomato plants, take a shower, eat breakfast, and watch the news (Tr. 572-73). In the afternoon, he reported that he would take a nap or read (even though he later reported that he was dyslexic), and would watch television or visit with his wife in the evening (Tr. 573-74, 585). He claimed he went to bed between 2:00 a.m. or 3:00 a.m. (Tr. 574).

Allen also reported that he could take care of most of his personal needs besides buttoning buttons, but rarely helped with the household chores (Tr. 575). Allen claimed he could walk about a block and a half, but then we would need to rest for about twenty minutes (Tr. 577). He claimed he could remain seated for about twenty or twenty-five minutes (Tr. 578). He also indicated that he had trouble stooping down to reach something, or reaching above to retrieve something from a

cabinet, and that he sat on stool if he ever cooked (Tr. 580, 585).

Allen also claimed that when working at the GoodWill in November 2006, he could not continue to work for four hours a day because of his back pain, which resulted in low stamina (Tr. 584). Allen's vocational counselor and supervisor confirmed this and determined Allen needed to stop working due to the likelihood he would harm himself in light of his low stamina and inability to work full days (Tr. 280-82).

## C.   Procedural Background

On February 11, 2004, Allen applied for disability insurance benefits and supplemental security income payments, alleging he became disabled on February 1, 2000, due to diabetes mellitus, peptic, gastric, and/or duodenal ulcer disease, encephalopathy, and osteoarthritis, indicating a bad back (related to a car accident), bad knees, left hand injuries, low stamina, and fatigue (Tr. 31, 60, 62, 318). Allen's applications were denied initially on March 11, 2004, and upon reconsideration on August 23, 2004; Allen appealed the denials to an ALJ (Tr, 113, 147, 148, 154). The hearing was held before an ALJ on April 10, 2006 (Tr. 45-55). Allen was represented by counsel and testified at the hearing, as did his wife, and William Tysdal, a vocational expert, and Thomas Atkin, a psychological medical expert, also testified (Tr. 17). In a decision dated June 22,

2006, the ALJ found Allen was not disabled at any time from the alleged onset date through the DLI (Tr. 513-57).

On November 16, 2006, the Appeals Council granted Allen's request for review, vacated the hearing decision, and remanded the case to an ALJ for further proceedings based on new evidence (Tr. 39-41). After a continuation of Allen's hearing of May 17, 2007, an ALJ held an additional hearing on July 25, 2007 (Tr. 558-62, 563-96). Allen was represented by counsel and testified, and Jerry Gravatt, CRC, a vocational expert, and Dr. Nancy Winfrey, a psychological medical expert, also testified (Tr. 563-96). In a new decision dated August 22, 2007, the ALJ found Allen was not disabled at any time from the alleged onset date through the DLI (Tr. 17-35).

In evaluating Allen's claim, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).[5] At step one, the ALJ found that Allen did

---

[5] The ALJ performs the following five-step sequential analysis to determine whether a claimant is disabled:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment

-14-

not engage in substantial gainful activity ("SGA") during the period from his alleged onset date of February 1, 2000, through his DLI of September 30, 2005 (Tr. 24).  At step two, the ALJ found Allen had the severe medical impairment diabetes mellitus; the ALJ found Allen did not have any severe mental impairments (Tr. 24-26).  At step three, the ALJ found Allen's impairment does not meet or medically equal one of the listed presumptively disabling impairments (Tr. 26).  At step four, the ALJ found that through the DLI, Allen

> retain[ed] a RFC for a light exertional level . . . need[ed] an ability to alternate between sitting and standing/walking every 30 to 45 minutes, pushing and pulling as might be needed to operate hand or foot controls is limited to the same light lift and carry level, who [could] occasionally climb stairs and steps but should not be required to climb

--------

> listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits.  If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

-15-

> ladders or scaffolds, occasionally
> stoop and kneel, who should not be
> subjected to concentrated exposure
> to extreme cold, extreme heat,
> dampness or humidity and should not
> be subjected to hazards of the
> workplace such as unprotected
> heights, dangerous machinery, and
> things of that nature, . . . must
> [have been] allowed to possess and
> use diabetic blood sugar testing
> equipment as well as possess and
> use any medication, snacks,
> beverages and things of that nature
> in response to test results, and
> whose work should not require
> anything beyond simple arithmetic
> or spelling as part of the job
> duties.

(Tr. 27).  The ALJ found that based on his RFC, Allen was unable to perform his past relevant work as a construction worker, store laborer, truck driver, and hotel clerk (Tr. 33).  However, at step five, the ALJ found that Allen was able to perform other light and sedentary jobs that existed in significant numbers in the national economy (Tr. 34-35).  The Appeals Council denied Allen's request for review on January 28, 2010; therefore, the ALJ's decision stands as the final decision of the Commissioner (Tr. 9-12).

## II. STANDARD OF REVIEW

The Court reviews the record ". . . to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000) (quoting *Clark v. Apfel*, 141 F.3d

-16-

1253, 1255 (8th Cir. 1998)).  "Substantial evidence is less than
a preponderance, but is enough that a reasonable mind would find
it adequate to support the Commissioner's conclusion."  *Id.*
"[The Court] may not reverse the Commissioner's decision merely
because substantial evidence supports a contrary outcome."  *Id.*
(quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir.
1999)).

## III. DISCUSSION

On appeal, Allen asserted several arguments warranting
reversal and/or remand of the final decision.  The issue in a
Social Security case is whether the Commissioner's final decision
is supported by substantial evidence on the record as a whole.
The specific issues presented by this case are (1) whether the
ALJ applied the correct standard for determining disability, (2)
whether the ALJ properly assessed Allen's credibility, (3)
whether the ALJ properly determined Allen's RFC, and (4) whether
substantial evidence supported the ALJ's finding that Allen could
perform other work.  Because the Court finds substantial evidence
does not support the ALJ's credibility findings, the Court does
not address that last two arguments.

## A. Standard applied in determining plaintiff's RFC

RFC is the most a claimant can do despite physical and
mental limitations caused by his impairments, including any
related symptoms.  20 C.F.R. § 404.1545(a).  "RFC is the

individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule."  S.S.R. 96-8p, 1996 WL 374184, at *2 (Soc. Sec. Admin. July 2, 1996).  "The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006)).

        Allen claimed the ALJ failed to apply the "regular and continuing" standard when assessing her RFC.  The Court is satisfied that the ALJ considered the applicable legal standards. The ALJ did not use the "regular and continuing" language at one point in the opinion, but the ALJ noted that an individual's RFC is the claimant's ability to perform "*sustained* and work-related physical and mental activities on a *regular and continuing basis*" (Tr. 20)(emphasis added).  *See* SSR 96 8-p.  The ALJ further provided that "regular and continuing basis" meant "eight hours a day, for five days a week" (Tr. 20).  Thus, the Court does not find that the ALJ committed any legal error.

-18-

**B. Credibility Assessment**

An ALJ's credibility findings must be supported by substantial evidence. *Robinson v. Sullivan*, 956 F.2d 836, 839 (8th Cir. 1992). "The Social Security Act generally precludes consideration on review of evidence outside the record before the Secretary." *Delrosa v. Sullivan*, 922 F.2d 480, 483 (1991) (citations omitted). Thus, the new evidence provided with Allen's brief will not be considered by this Court, and will not be remanded for consideration at the administrative level as Allen has not demonstrated "good cause for failing to submit the new evidence." *Id.* at 483-84. "In analyzing a claimant's subjective complaints of pain, an ALJ must examine: '(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.'" *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). If the ALJ gives a "good" reason for discrediting the claimant that is supported by the record, the Court will defer to the ALJ's judgment. *See id.*

Allen testified that he experiences complications due to diabetes mellitus, peptic, gastric, and/or duodenal ulcer disease, encephalopathy, and osteoarthritis, indicating a bad back (related to a car accident), bad knees, left hand injuries,

-19-

low stamina, and fatigue, which prevented him from being able to
work full-time.  The ALJ found that Allen had the medically
determinable impairment of diabetes mellitus, but such could not
have been reasonably expected to produce the alleged symptoms,
and Allen's statements regarding the intensity, persistence, and
limiting effects of such symptoms were "barely credible."  The
ALJ proceeded to find that despite the credible limitations
imposed by plaintiff's symptoms, plaintiff could perform light
work with some restrictions.

      The ALJ's credibility assessment is not supported by
substantial evidence of the record as a whole.  First, Allen's
complaints of pain and fatigue are consistent with the objective
medical evidence, as examinations by Dr. McCoy and Dr. Nyase
revealed Allen suffered from back pain and fatigue, poor gait,
and balance issues, relating to his struggle with diabetes and
his back injury.  Allen's complaints are also consistent with
opinion evidence in the record.  Mr. Crane found that plaintiff's
complaints of pain were credible, and suggested Allen could not
lift more than ten pounds, and should be excused from bending
stooping, reaching, kneeling, pulling, and prolonged standing and
sitting, due to his "chronic back problem."  Further, Allen's
vocational counselor and supervisor confirmed this and determined
Allen needed to stop working (at GoodWill) due to the likelihood
Allen would harm himself in light of his low stamina and

-20-

inability to work full days.  The ALJ did not specifically discredit the objective medical evidence and did not even address the opinion of Allen's vocational counselor and supervisor.  The ALJ discredited the opinion of Mr. Crane in full because he was merely a physician's assistant, not a treating medical physician.

Instead, the ALJ accorded weight to Dr. Reed's opinion that Allen's complaints were only "partially credible," and Allen could perform light work with some restrictions.  Dr. Reed's findings support the ALJ's credibility assessment, but Dr. Reed did not examine the plaintiff and only performed a review of his file.  Generally, opinions of doctors who have not examined the claimant do not constitute substantial evidence.  *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).  Moreover, Dr. Reed's basis for discrediting plaintiff is not supported by the record.  Dr. Reed's findings are based upon two fundamental errors.  Dr. Reed provided that (1) there was no evidence in the record that Allen "complained of" back pain to medical sources, and (2) a CT of Allen's brain showed normal results.  These findings are unwarranted and misleading: there was substantial evidence in the record that Allen complained of back pain and an MRI of Allen's brain showed slight atrophy and hepatocerebral degeneration.  It can be concluded that Dr. Reed did not fully consider all of the evidence in this case, and thus his conclusions of Allen's

credibility are not supported by substantial evidence of the
record.

Further, it is not clear that the ALJ considered all of
the *Polaski* factors before discrediting Allen's complaints.  The
ALJ did not specifically discuss the duration, frequency and
intensity of Allen's pain and fatigue, the effectiveness and side
effects of taking medication (as medication for pain was
prescribed for Allen at least twice and there is evidence Allen
suffered side effects from such medication), or any aggravating
factors.  Allen claims that one of the primary reasons he is
unable to perform full-time work is that increased activity
aggravates his pain and fatigue, and results in low stamina.  The
ALJ did not explicitly address whether this claim was consistent
with other evidence in the record such as the opinion of Allen's
vocational counselor and supervisor.

The ALJ identified several reasons for discrediting
Allen, but some of these reasons are not supported by the record.
The ALJ's primary reason in discrediting Allen was that he did
not receive:

> the type of medical treatment one
> would expect for a totally disabled
> individual, with relatively
> infrequent trips to the doctor for
> the allegedly disabling symptoms
> and significant gaps in his
> history, for treatment that has
> been essentially routine and/or
> conservative in nature.  In
> addition, his non-use of

-22-

> medications does not suggest the
> presence of any impairment which is
> more limiting than found in this
> decision.

(Tr. 29).

In response to this finding, Allen testified that he is unable to pay for these medical services.  Without directly inquiring into Allen's financial situation on the record, the ALJ discredited Allen's contention because his wife worked full-time, they owned a home, and Allen was able to purchase cigarettes. The ALJ needed to have more specifically analyzed the objective evidence surrounding Allen's finances before making this finding as it is not clear that the price of cigarettes is equivalent to physical therapy.  Furthermore, the record contained evidence that Allen suffered side effects when taking pain medication and such was a likely cause behind Allen's failure to take consistent pain medications -- another piece of evidence the ALJ failed to address.

The ALJ also noted that Allen claimed to receive special treatment in receiving his associates degree, but found "there is no record in the evidence to support this claim" (Tr. 28-29).  This finding is simply untrue -- Wiedel, the therapist who examined Allen in December 2001, provided Allen's community college with specific instructions for attending to Allen's needs, which were consistent with Allen's testimony.  The ALJ also found Allen's daily activities were inconsistent with his

-23-

claimed limitations as there was evidence in the record that at one point (although it is not clear from the record for how long because the ALJ failed to inquire into this matter), Allen may have been separated from his wife and living alone with no particular help in maintaining the household.  This finding is not necessarily inconsistent with Allen's claim that he was unable to perform full-time work, let alone full-time light work, which requires the ability to stand/walk for 6-hours of an 8-hour work day.  The Eighth Circuit has found that the ability to perform daily activities similar to Allen's is not inconsistent with the inability to perform full-time employment.  *See Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998); *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003); *Ricketts v. Sec. of Health and Human Servs.*, 902 F.2d 661, 663 (8th Cir. 1990).

Based on the foregoing, the ALJ's credibility assessment is not supported by substantial evidence.  Further analysis of Allen's claim is necessary to determine whether he is capable of full-time work.  Also, the ALJ should properly assess if Allen's history of alcoholism and apparent incarceration affect his claim for disability benefits.  Accordingly, a

separate order will be entered in accordance with this memorandum opinion.

DATED this 16th day of February, 2011.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court

-25-